## B. F. Bigler, Plff. in Err., *v.* Samuel Wilson et Ux.

Where a judgment note was given by a husband and wife, for money loaned to the husband to purchase land, and the deed of the land was executed to the wife by consent of the lender's agent, a sale, on execution on the judgment note against the husband, of the land as the property of the husband, and a sheriff's deed under such sale, does not devest her title in the land.

(Decided October 18, 1886.)

Error to the Common Pleas of Venango County to review a judgment on a verdict for defendants in an action of ejectment. Affirmed.

The facts are stated in the charge to the jury in the court below by TAYLOR, J.:

"The plaintiff brings this action of ejectment, claiming the right of possession of 6 acres, 6 perches of land, land situated in Cranberry township, this county.    He offers in evidence the writ and the return of the sheriff thereon, which is prima facie evidence that the defendants were in possession of the land at the beginning of the suit.    It is conceded by both sides here that the title to this land was in Mr. Will and wife, prior to its transfer by them to the defendants here.    It seems that Mr. Will got Mr. W. J. Bigler to sell this land.    So negotiations were opened with the defendant, Samuel Wilson, which finally resulted in the purchase of the land, the deed being made to Mrs. Wilson, wife of the defendant, by his direction.    One thousand dollars was borrowed by the defendant from the plaintiff here, to pay upon the purchase of this land, $2,450 being the whole amount of the purchase money, $1,500 of which was paid at the delivery of the deed, and the balance secured by a mortgage upon this property.

"A judgment note with the usual waivers was taken by the plaintiff for his loan of $1,000, the note being signed by both Mr. and Mrs. Wilson.    Upon failure of payment of it at maturity, the plaintiff issued an execution, and levied upon this

NOTE.—For the transfer of property by husband to wife as constituting fraud on creditors, see note to Tibbins v. Jones, 2 Sad. Rep. 526.

land as the property of Samuel Wilson, the defendant. It was sold at sheriff's sale and bought in by the plaintiff, who received the deed from the sheriff for it. So far there is no controversy. The sheriff's sale devested whatever title Samuel Wilson had in this land, and it was vested in the plaintiff; but if Mrs. Wilson had a good title to that land, this sale would not vest a good title in the plaintiff, and he would not be entitled to recover.

"The question here is, whether or not that sale devested the title Mrs. Wilson had, and placed it in the plaintiff. The plaintiff claims it did, and offers considerable evidence in support of his theory. The original purchase, he claims, was negotiated by Mr. Wilson, and the money was borrowed by him alone, and he, the plaintiff, believed at the time he loaned the money that he was secured for it by a lien upon this property. He further tells you he knew nothing about this deed being made to Mrs. Wilson until after it was executed. In further support of his theory we have the testimony of Mr. Dorsworth, who says that some two or three years after that, in a conversation with Mrs. Wilson, she said the land belonged to Mr. Wilson, who had the deed made in her name for some purpose of his own. In controversy of that, you have the testimony of Mr. Wilson, who says that the conversation between Mr. Dorsworth and his wife did not exceed a half a minute in length, and there could have been no such lengthy conversation as Mr. Dorsworth relates. On the part of the defendant we have considerable testimony. He claims that before the money was paid, or the note given, or the deed executed, it was all understood by the plaintiff that the deed was to be made to Mrs. Wilson. The relation existing between the parties is shown as a circumstance to be taken into consideration.

"Mrs. Wilson being a sister of the two Biglers, W. J. and Frank, and Mr. Wilson a brother-in-law, W. J. Bigler says he was acting as a real estate agent, and negotiated the trade between Will and Wilson. He also, it seems, did considerable of this business for his brother, the plaintiff here. A letter is introduced here, to him, William Bigler, from Samuel Wilson, dated September 9, at the close of which Mr. Wilson requests him to have the deed made to Mrs. Wilson, which is the first he knew the deed was to be made to her. Defense also allege that he prepared the note, had it sent to New Castle for their signa-

tures, and on its return handed it over to the plaintiff, and he was acting as a go-between for the parties, asking you to infer by that and other evidence, that the plaintiff had full knowledge of all the business.

"Mrs. Will is called by the defense. She tells you, on the morning before the deed to Mrs. Wilson was executed, that the plaintiff came to her house and handed her a note, which requested her husband and her to come down to Squire Fulton's the next morning at 6 o'clock, and execute the deed, and the plaintiff at that time told her that the deed was to be made to Mre. Wilson. The plaintiff denies this *in toto*. He says he did not take this note to Mrs. Will, he never was there at the house, and did not know her until they had moved from that place. You remember all the testimony for yourselves, not as I state it. Mrs. Will says she is not mistaken; if she saw the plaintiff once, she would know him again. Then Mr. Hersh is sworn, who tells you that not long ago, in a conversation with the plaintiff, he asked him 'why he did not settle this thing up,' and said to him, 'you knew the deed was to be made to Mrs. Wilson,' and he admitted he did know it, but said, 'he wanted his money.' It is worthy of notice that the plaintiff does not go on the stand and deny this. Mr. McConnell testifies that at the time this bargain was made that Mr. Wilson was not in debt, so far as he knew. If you believe all the evidence in the case, he was out of debt when this deed was executed, by his direction, to his wife, except $30 or $40, which he could pay any day, if you believe him; and if you believe Mr. McConnell, Wilson had about $1,800 due him, which was payable in annual instalments of $500. Perhaps all of these sums have been paid to Mr. Wilson before this time.

"Where property is claimed by a married woman, the burden of proof is upon her to show how she obtained it. In this case the burden of proof is upon the defendants to show you by clear, satisfactory evidence, that the husband was out of debt at the time the deed was executed, that he was not going to engage in any hazardous business, and that the conveyance to the wife was not done to defraud anyone. If the defense has so satisfied you, then the burden of proof is shifted on the plaintiff to satisfy you as to other questions arising in the case. If the defendant has satisfied you as stated, he had the right to have the title put in his wife's name. Then [the only point in the case is: Did

the plaintiff know that the title was to be placed in the wife's name? If he were in ignorance of it, loaned his money expecting to have the land for security, and there was some trick about it, it would be fraud upon him and an injustice to him that that title should be sustained as against his claim], and the plaintiff ought to recover. On the other hand [if he knew that the deed was to be executed in the name of Mrs. Wilson, and he loaned the money with a full knowledge of it, then the land in her hands could not be made liable for the debt her husband had incurred.

"As you find that question, so bring in your verdict.]"

The execution mentioned in the above charge was issued against the husband alone, the wife's name having been stricken from the record on the ground of coverture.

Plaintiff, *inter alia,* presented the following point:

6. The fact that the defendants gave to the plaintiff their joint judgment note to secure the money loaned them by the plaintiff, to be used in the purchase of the land in question, is strong evidence, and (if the defendants also, at the time, understood and intended the loan to be a charge upon the land), conclusive evidence that the loan was made upon the credit of the land, and the land was in equity bound for the payment of the money, and the plaintiff is entitled to recover.

*Ans.* This point as made is answered in the negative. The giving of the joint note of husband and wife is an item to be considered by the jury in the solution of the question as to whether the plaintiff relied upon the land or the judgment note with waivers as individual security. Third assignment of error.

Defendant, *inter alia,* presented the following points:

f. If plaintiff is entitled to recover at all, it is because they find that the land in question was deeded to Mrs. Wilson with intent to hinder, delay, and defraud the creditors of Samuel Wilson. If the jury find that plaintiff knew the land was to be deeded to Mrs. Wilson, and loaned his money to Samuel Wilson, then he is to be presumed to have accepted Samuel Wilson individually, without regard to the property, and plaintiff is estopped from raising the question of fraud, and their verdict must be for defendants.

*Ans.* The presumption would be as stated in the point, until rebutted. Fifth assignment of error.

2. To arrive at a conclusion whether plaintiff, at and before the time he loaned his money, knew the deed was to be made to Mrs. Wilson, they look at the acts and declarations of plaintiff and those acting in his behalf and with his knowledge, and the fact that he accepted a note for the loan, signed by Mrs. Wilson. Affirmed. Sixth assignment of error.

3. If the jury find that at the time of the conveyance to Mrs. Wilson Samuel Wilson was not indebted to anyone other than this plaintiff, was not about to, and did not engage in any hazardous business, then he had a right to have the land deeded to his wife; and the transaction is not affected by the fact that it was all the property the husband had, nor that he borrowed a portion of the purchase money from plaintiff. Affirmed. Seventh assignment of error.

4. If Samuel Wilson made or caused to be made a transfer of property to his wife, it is no difference how much he so transfers, if he has sufficient property or money left to pay his debts existing at the time of the transfer; and if the only indebtedness of Samuel Wilson is the one due plaintiff, it is not such a debt as will avoid the deed to his wife upon the ground of intent to hinder, delay or defraud either plaintiff or creditors, and their verdict should be for defendants.

*Ans.* Affirmed, if you further find that the plaintiff loaned the money with full knowledge that the deed was to be taken by, or in the name of, Mrs. Wilson. Eighth assignment of error.

A verdict was rendered for defendants, upon which judgment was entered, and plaintiff took this writ, assigning as error the portions of the charge embraced in brackets and the answers to the points presented by the counsel as above noted.

*McCalmont & Osborn* and *J. H. Osmer,* for plaintiff in error.—That which would estop parties *sui juris* will not necessarily estop a *feme covert;* yet coverture does not prevent an estoppel. McCullough v. Wilson, 21 Pa. 436.

A married woman cannot dishonestly retain real estate conveyed to her trustee and at the same time avoid her bond and mortgage for it on the ground of coverture. Heacock v. Fly, 14 Pa. 540.

"Whether the contract be void or voidable, or whether it be made by an infant or *feme covert* is immaterial, because its

validity depends, not so much upon ratification as upon honesty and conscience, which will not permit anyone unjustly to enjoy both the thing itself and its value.    The two are so repugnant to each other that the enjoyment of one, in any form which the law sanctions, operates as an estoppel against a claim to the other." Fulton v. Moore, 25 Pa. 468, 475, *et seq.;* Fryer v. Rishell, 84 Pa. 521; Dando's Appeal, 94 Pa. 76; Brown's Appeal, 94 Pa. 362.

And the rule is the same as to infants.. See Roof v. Stafford, 7 Cow. 179, and cases cited.

*R. W. Dunn,* for defendants in error.—The legal position of defendants is the same as that in Thompson v. Thompson, 82 Pa. 378, and cases cited.

Plaintiff is estopped from alleging fraud, and cannot recover from the land, if he knew the deed was to be made to the wife and loaned the money to the husband.    Thompson v. Thompson, 82 Pa. 378; Nippes's Appeal, 75 Pa. 472; French v. Mehan, 56 Pa. 286; Snyder v. Christ, 39 Pa. 499; Mateer v. Hissim, 3 Penn. & W. 160; Greenfield's Estate, 14 Pa. 502; Byrod's Appeal, 31 Pa. 241.

If a person is not indebted, and is not about to engage in hazardous enterprises, he has a right to have land deeded to his wife, even if he borrow part of the purchase money, or invest her with all he has.    Goff v. Nuttall, 44 Pa. 78; Thompson v. Allen, 103 Pa. 44, 49 Am. Rep. 116; Thompson v. Thompson, 82 Pa. 378; Nippes's Appeal, 75 Pa. 472; Wilson v. Howser, 12 Pa. 109; Miller v. Pearce, 6 Watts & S. 101; Chambers v. Spencer, 5 Watts, 404.

The reception of a note signed by the wife was evidence of knowledge by plaintiff of wife's interest in the land.    Snyder v. Christ, 39 Pa. 507.

PER CURIAM:

The evidence in this case reveals no fraud on the part of Wilson or his wife.    The execution of the deed to her was done under the direction of the plaintiff's agent, and the taking, by that agent, of her judgment note, which, of course, was good for nothing, as security for the money advanced by his principal, was his mistake; a mistake which neither the court below nor this court can cure.

The judgment is affirmed.